NEW-YORK,
Nov. 1810.

HEARSEY
v.
PRUYN.

HEARSEY *against* PRUYN.

IN error, on *certiorari* from a justice's court. *Pruyn* brought an action against *Hearsey*, before the justice, as a *toll-gatherer* of the bridge of *Schenectady*, for demanding and taking of the plaintiff *toll*, over and above what was due, at three several times, to wit, the 13th *June*, 1809, 6 1-4 cents for one load, the 14th *June*, 18 3-4 cents for three loads, and 15th *June*, 6 1-4 cents for one load, above the legal toll.

The defendant pleaded the general issue, with notice, and there was a trial by jury.

According to the true construction of the second section of the act, passed the 29th *March*, 1809, relative to the *Mohawk* turnpike and bridge company. (sess. 32. c. 189.) the corporation cannot legally exact more than *half toll*, or 6 1-4 cents for crossing the bridge at *Schenectady*, with a wagon and two horses, &c. from the inhabitants of the city of *Schenectady*, or from persons going to and from *mills*, &c. &c. The discretion given to the corporation to mitigate the rate of tolls in such cases, is to be exercised only, in reducing them below one half.

The words in the act, " going to and from *mills*," comprehend *saw* mills, as well as *grist* mills.

An action may be maintained against an agent who has received money, to which his principal has no right, if the agent has had notice not to pay the money over; and in some cases, without such notice, if the money has not been actually paid over.

*It seems,* that the right of a corporation to take toll may be tried in an action against the collector, where notice is given to him not to pay it over.

If a plaintiff reads in evidence an act of the legislature from a newspaper, which is admitted by the court, and the defendant afterwards reads an exemplified copy of the same act; he cannot afterwards, on *certiorari*, allege for error, the admission of the act read by the plaintiff, though not legal evidence.

NEW-YORK,
Nov. 1810.

HEARSEY
v.
PRUYN.

It was proved that *Pruyn*, in *June*, 1809, paid *Hear-sey* 12 1-2 cents for passing the bridge with a load of plank; that he called on the witness, in presence of *Hearsey*, to take notice that the toll was overcharged, and that *Pruyn* owned a mill in the fourth ward of *Schenectady.* It was also proved that the plaintiff had carried from his mill, across the bridge, several loads of plank in *June*, and that the defendant admitted, that for all the loads of *plank*, which *Pruyn* had carried across the bridge, he had received 12 1-2 cents *toll* for each load. It was also proved, that six cents only was exacted from another person, returning with a full load from market.

The plaintiff then gave in evidence, though it was objected to, an act of the legislature printed in a newspaper, under which was the signature of *D. Tomilson*, treasurer of the *Mohawk Bridge Company*.

The defendant moved for a nonsuit, which was refused by the justice. The defendant then gave in evidence the exemplifications of several acts relative to the subject, among which was the act read by the plaintiff.

It was also proved that the defendant was duly appointed collector of the tolls by the treasurer, pursuant to a resolution of the *company*.

The jury found a verdict for the plaintiff below for 31 cents, on which the justice gave judgment.

The plaintiff in error insisted that the judgment below ought to be reversed.

1. Because the defendant in error was not exempted from paying toll.

2. That the right of the corporation could not be tried in an action against the collector of tolls.

3. That the action could not be maintained, without an express notice to the collector, not to pay over the tolls received by him.

*Henry*, for the plaintiff in error.

*J. B. Yates*, contra.

SPENCER, J. delivered the opinion of the court. The first section of the act of the 29th of *March*, 1809, (sess. 32. c. 189.) gives a toll for crossing the bridge, of 12 1-2 cents for every burthen wagon drawn by two horses, &c. The second section declares it to be lawful for the president and directors to mitigate the rates of toll to the inhabitants of the city of *Schenectady*, passing the bridge on foot, horseback, or in carriages of any description, not loaded, (500 pounds weight, exclusive of passengers, to constitute a load, to be determined by the opinion of the collector,) and also all mail, regular and extra stages, owned in said city, all wagons and sleighs employed in carrying firewood into the first and second wards of said city, passing either way, and on all loaded wagons belonging to the inhabitants of said city, passing said bridge, in their ordinary work on their lands or farms, or going to. or from mills, or going to market with the produce of their farms, or returning therefrom, provided, that the toll demanded as above, shall not be more than one half the rate established by that act.

This section, though obscurely worded, is, I think, to be construed thus, when taken in connection with the proviso; all the inhabitants of the city of *Schenectady*, passing the bridge on foot, on horseback, or in any carriage, the load on which, exclusive of passengers, shall be under 500 pounds weight, to be determined by the collector, are liable to pay not more than one half the rates of toll established by the act; and with respect to stages owned in the city, all wagons and sleighs employed in carrying firewood into the first and second wards, passing either way, and all loaded wagons belonging to the inhabitants of the city, passing the bridge in their ordinary work on their lands or farms, or going to or from mills, or going to market with the produce of their farms, or returning therefrom, are exempted by the act from paying more than one half the rates of toll, without reference to the weight of the loads. The discre-

tion vested in the president and directors, to mitigate the rates of toll, may or may not be exercised by them, in reducing them less than half, but in the cases specified, they cannot legally exact more than half the toll established by the act.

The plaintiff below was going to and from his saw-mill, at the time the full toll was exacted, and it has been made a question, whether a saw-mill comes within the description in the act, " of going to and from mills." It appears to me, that these terms include mills of every description, and I cannot perceive why saw-mills should not be deemed to answer the description as fully as grist-mills, or any other mills. The evidence offered by the plaintiff below, I also think was sufficient to enable the jury to decide, that he came within the exemption granted by the act. At all events, it cannot be said that there was no evidence of the fact, that when the full toll was exacted, the plaintiff below was going to and from his mill.

The second and third points may be considered together. The law is, I believe, well settled, that an action may be sustained against an agent, who has received money to which the principal had no right, if the agent has had notice not to pay it over; and, in some cases, the action has been sustained where no notice was given, if it appears that the money has not actually been paid over. (1 *Chitty*, pl. 25. *Cowp.* 565. 4 *Burr.* 1985. Ld. *Raym.* 1210. 4 *Term Rep.* 553. *Stra.* 480. *Bull. N. P.* 133.)

It is insisted, that the right to the toll taken is a franchise, and that it cannot be tried in an action against the agent; and in *Sadler* v. *Evans,* (4 *Burr.* 1985.) Baron *Perrott* recognised the doctrine, " that the right to an inheritance should not be tried in an action for money had and received, to be brought against the receiver." Lord *Mansfield,* in delivering the opinion of the court, does not sanction that principle, though the court ap-

proved of the general principles adopted at the trial; his lordship said, " he kept clear of all payments to third persons, but where it is to a known agent : in which case, the action ought to be brought against the principal, unless in special cases, as under notice or *mala fide.*"

NEW-YORK,
Nov. 1810.

I am of opinion, that in this case there was that notice ; when the toll was paid the plaintiff below called on a witness, in the presence of the defendant, to take notice that the toll was overcharged. This was sufficient to put the defendant on his guard, and implied that he meant to seek redress.

There was an objection to the justice's admitting a private act to be read from a newspaper. This objection would be fatal, did it not appear that the defendant read an exemplification of the same act. We are asked to go back to the point of time when the motion was made for a nonsuit ; this we cannot do, but must judge from the whole record, and though the admission of the evidence was illegal, the defendant removed the objection by reading the exemplification. It has been frequently ruled here that a party may thus commit himself by legalizing what was before illegal.

The judgment below must be affirmed.

Judgment affirmed.