## MILLS OLCOTT *versus* GEORGE BANFILL *et a.*

When individuals under a charter from the government construct works for the public accommodation and open them to the use of the public, this is in law a dedication of the works to the public use, and no toll can be legally demanded, unless it be authorized by the legislature.

And works erected without a charter from the government may be dedicated to the public use in such manner as to render it illegal to take toll.

THIS was an action of assumpsit. The first count was upon an account annexed to the writ as follows :—

"1823, June 22.  To toll on 80 tons of lumber through White river locks and canals   $80,00.

"    October,   To sawing and canalage of 85091 feet of lumber at 15s.         212,73.

$292,73.

There was a second count upon a note, dated November 3, 1823, for $181,00, payable on demand with interest.

The cause was tried here upon the general issue at May term, 1826, when it was proved on the part of the plaintiff, that in June, 1823, 80 tons of lumber belonging to the defendants, were passed through the White river locks and canals by a person in the employment of the plaintiff ; and that in the October following the defendants had 85091 feet of lumber sawed at the plaintiff's mills, on White river falls, and passed through said locks. The usage at said locks in the year 1823, was, and for some time previous had been, to take one dollar as toll for the passage of 1000 feet, and $1,50 for sawing the same. Considerable quantities of lumber belonging to the defendants, had, in previous years, passed through said locks, for which they had paid at the rate aforesaid.

It was also proved, on the part of the plaintiff, that the said locks are situated upon White river falls, in Connecticut river, and that the note mentioned in the declaration was given for toll demanded for the passage of another lot of timber through said locks.

It was then objected, on the part of the defendants, that the evidence thus introduced by the plaintiff, was insufficient in law, to show a right in the plaintiff to maintain this action, but the court overruled the objection.

The defendants then produced an act of the legislature passed on the 12th June, 1807, by which Mills Olcott and his associates were constituted a corporation, by the name of "The White River Falls Company," and invested with the exclusive privilege of "cutting canals and locking said falls, and rendering said Connecticut river navigable for boats and lumber," from the head of said falls, at the upper bar, to the foot of the falls, at the lower bar. Provision was made in the act for "setting off" the land of individuals, to the corporation, in case it should be necessary to the enjoyment of the privileges granted ; and the corporation was empowered for twelve years, to fix the rate of toll for passing through its locks and canals, under certain restrictions. It was also provided by the same act, that "the road leading by said falls, from the landing place above to the landing place below," should not be obstructed, and that the said Olcott and his associates should not erect any dam across said river, so as to prevent the free passage of lumber down Connecticut river, as used and enjoyed before that time.

It was then proved, on the part of the defendants, that the said locks were completed in the year 1810, and toll received ; and that for the year 1823, and for several years previous, no rate of toll was fixed by the corporation in the manner prescribed by the said act. But it appeared that the defendants were charged at the same rate as other persons.

It was also proved, on the part of the defendants, that previous to the making of said locks, there was a road by which lumber was carted from the landing place above, to the landing place below, said falls ; and that one of the locks had been placed within said road, so as wholly

to obstruct the same, and that no road had since been open to the same place of landing at the river below the falls. And by means of one of the dams erected, a hundred rods of the road round said falls was overflowed and wholly destroyed. In 1823, there was no road round the falls, what remained unobstructed having become altogether ruinous by neglect to repair it. In building said locks two dams were erected across said river, so that no raft could pass except through the locks, and so that logs at certain seasons were impeded and stopped in their passage by them. The defendants offered to prove that the sum demanded was greater than ought to be paid, if the plaintiff had a right to toll, but the evidence was rejected.

A verdict was taken by consent for the plaintiff, for the amount of his demand, subject to the opinion of the court upon the foregoing case.

*Patterson* and *Joel Parker*, for the defendants.

A right to claim toll can exist only by grant or prescription. Com. Dig. " Toll," F & E ; 4 Mod. 319 ; 1 Wilson, 109–115 ; Strange, 1238 ; Cro. Elizabeth, 710, *Smith* v. *Shepheard* ; ibid, 558 & 591, *Heddy* v. *Wheelhouse* ; 3 Lev. 424, *Crispe* v. *Bellwood* ; 2 ditto, 96, *Prideaux* v. *Warne* ; Cowper, 47, *Colton* v. *Smith* ; ibid, 661, *Blakey* v. *Dinsdale* ; 3 Burr. 1402 ; Willes, 111 ; 2 Wilson, 296 ; 1 D. & E. 660 ; 10 East, 476 ; 4 Taunt. 520 ; 1 B. & C. 223 ; 3 Atkins, 815 ; 2 Bl. Com. 47 ; 3 Dane's Abr. 173–181.

The plaintiff's case assumes that Connecticut river is private property—that he has a right to erect works on it—and that any person passing those works is liable to pay him such a sum as he pleases, or has been accustomed to charge. But admitting all that is thus assumed, the plaintiff is not authorized to demand a toll for use or passage. " Though a man may make an agreement for goods landed out of a ship upon his land, yet he cannot take two pence for every barrel or other sum certain for the goods landed there, for that would be to raise a toll

or custom without the consent of the king. Comyn's Digest, "Toll," F.

But Connecticut river is a public highway. 3 N. H. Rep. 325, Scott v. *Wilson*; 2 Conn. Rep. 481, *Adams* v. *Pease.* And no person has a right to demand any toll for passing along a public highway, even if he has improved it by building conveniences to facilitate the passage, without a grant from the government.

The river being a public highway, the toll, which the plaintiff demands, is *toll thorough*, and therefore against common right. And to establish a right against common right, a title and a consideration must be shown—something more than possession and mere usage. Willes' Rep. 114; 3 D. & E. 264; 2 Cowen, 419, *Sprague* v. *Birdsall.*

The river being a public highway, the dam and locks of the plaintiff obstructing the river would be a nuisance, unless he showed a right, by grant, to erect them. 3 Caine's Rep. 312, *Palmer* v. *Mulligan*; 17 Johns. 195, *People* v. *Platt.*

If a man erect a gate across a highway and demand a toll, he may be indicted for the obstruction, and punished, unless he can show an authority to maintain it. 1 Hawkins, P. C., B. 1, chap. 76, sec. 50; 1 Esp. 148, *Hubert* v. *Groves.*

A river common to all is a highway, and an obstruction there, punishable in the same manner. 1 Hawkins, P. C., B. 1, chap. 76, sec. 1.

If the plaintiff has no authority from the legislature to erect his locks and dam, an action on the case lies against him, in favor of any individual who may suffer an injury by means of the locks or dam. 10 Johns. 236, *Shaw* v. *Crawford*; 4 M. & S. 101, *Rose* v. *Miles.*

The right to erect locks on this river and to take toll, has been the subject of repeated grants by the legislature and no one has before attempted to do either without such grant. This shows the universal understanding in relation to the right.

And there must not only be a grant, but the toll must be taken according to the grant. 18 Johns. 397, *Griffin* v. *House*.

If the plaintiff was owner of the locks, this of itself gave no right to toll. For toll is not necessarily incident to locks. In England, tolls are usually payable at fairs and markets, but toll is not incident to a fair or market. Com. Dig. "Market" F 1 ; Cro. Eliz. 558 and 591 ; 2 Strange, 1171 ; 3 B. & A. 366.

Mere possession of the locks with evidence that toll had been taken there, furnished no evidence of a grant, and of course none of the right claimed.

If, however, possession furnished *prima facie* evidence of a right, it was competent for the defendants to rebut it, and this they did by producing the charter of the corporation, and showing the right to be in the corporation. The plaintiff showed no assignment of the right to himself.

This evidence negatived any right on the part of the plaintiff. It also negatived any grant to the plaintiff by showing one to others. And it negatived any prescription by showing a recent commencement of the claim to toll.

But even the charter gives no right to toll after twelve years, and the limitation expired in 1822, previous to this demand.

It appears from the case stated, that the free passage of lumber down the river as before, is prevented by the dams of the plaintiff, contrary to the charter.

This, with the placing of the locks in the road compelled the defendants to pass through the locks, and to demand toll under these circumstances was extortion. The case of *Rex* v. *Burdet*, 1 Ld. Raymond, 148, was an information for extortion by the defendant, a farmer of Newgate market. The extortion with which he was charged was, that he had taken divers sums of money of the market people as rent for the use

of the stalls in the market. The court held, that if the defendant erected stalls and did not leave sufficient room for the market people to stand and sell their wares, so that for want of room they were forced to hire the stalls of the defendant, taking the money for the use of the stalls would in such case, be extortion. The present case is in principle similar, and what would be extortion cannot furnish the ground of a claim in a court of justice.

The defendants in this case, ought to have been permitted to show that the toll demanded was unreasonable. If any toll could be taken after the expiration of the twelve years, it would be only a reasonable toll.

*Joseph Bell*, for the plaintiff, relied upon the following points and authorities.

The plaintiff was in the actual possession of the locks and canal, and the defendants passed their lumber through the same by his permission. This was, therefore *prima facie* sufficient to maintain the plaintiff's action for the customary rate of compensation against all, having no right, whether the plaintiff's possession was rightful or otherwise.

But the plaintiff was, in fact, the owner as well as the occupant of the soil on both sides of the river ; and the falls around which the canal was built were, and always have been, impassable by boats or rafts of lumber, until the plaintiff, at his own charge, and on his own soil, constructed the canal through which the defendants passed. Demanding and receiving a stated and uniform compensation for a passage through the canal so owned and constructed, was not demanding and receiving toll in any sense in which the term is used in the books, but is similar to piccage and stallage in a market. Com. Dig. " Market" F 2 ; 1 Wilson, 107. Toll, in the language of the books, is a claim of right by an individual against common right in the public, and cannot therefore exist but by a grant or prescription. Com. Dig. Toll F ; 2 Wilson, 296. But this is wholly on account of the pre-

<i>Olcott</i><br><i>v.</i><br>Banfill et a.

vious dedication, by the individual, of all his rights in the place or privilege where the toll is demanded, to the public, as in fairs and markets and highways, or where the individual had no previous rights, as in the means of conveyance over navigable waters, as ferries and bridges. 1 Wilson, 107 ; 2 Strange, 1238 ; 1 D. & E. 660 ; 3 Lev. 424 ; Cowper, 47 ; 6 Cowen, 518, *Jennings' case.*

The plaintiff's locks and canals have never been freely dedicated to the public use, nor have the public, as such, ever had any right to the free use and enjoyment of the river and soil where the locks and canals are situated, in any manner whatever. The claim of compensation for passage through them, is not a claim of right by an individual, against common right in the public, and may well be sustained without grant or presumption.

If the plaintiff's action is maintained without the aid of a grant, there is nothing in the act put into the case by the defendant's depriving him of that right. 5 Mass. Rep. 234.

*Joel Parker*, in reply.

The claim of the plaintiff cannot be supported, because this property was acquired in consequence of a charter granted to lock these falls—because if the whole of it were his private stream it is made *publici juris*, being improved by the public authority—and because the locks have been devoted to the common use under the charter. This point is fully supported by the treatise of Sir Matthew Hale, *de jure maris*. 6 Cowen, 529, note. He says that fresh rivers, as well as salt, may be under two servitudes, one of prerogative belonging to the king, and another of public interest, or belonging to the people in general—that the king has a right of franchise or privilege that no man may set up a common ferry for all passengers without a prescription, time out of mind, or a charter from the king. He may make a ferry for his own use or the use of his family, but not for common use of

Olcott
*v.*
Banfill et a.

all the king's subjects passing that way, because it does in consequent tend to a common charge, and is become a thing of public interest and use, and every man for his passage pays a toll which is a common charge. Hale further says, that fresh rivers that are of a common or public use, whether they flow and reflow or not, are *prima facie publici juris,* common highways for man or goods, or both, from one inland town to another, and that nuisances, such as hinder or obstruct the passage of boats &c. are punishable. He states also, that if a person at his own charge make his own private stream to be passable, and hereby that river which was his own in point of property becomes capable of carriage of vessels, yet this seems not to make it *juris publici,* and he may pull it down again, or apply it to his own private use. For it is not hereby made to be *juris publici,* unless it were done at a common charge, or by a public authority, or hath been devoted to a public use—that if he that makes such a new river or passage does it by way of recompense, or compensation, for some other public stream that he has stopped for his own conveniency, or if he purchase the king's charter to take a reasonable toll for the passage of the king's subjects, and puts it in use, these seem to be devoting, and as it were consecrating of it to common use. And he says further, that no man can take a settled or constant toll even in his own land for a common passage without the king's licence.

In this case, there has been all the dedication of these locks and canals to the public use that there ever is in any case where tolls are taken for passing turnpikes, and bridges, and canals. There has been such a dedication that the corporation or plaintiff has no right to refuse a passage. It has become a common passage, and no toll can be demanded without the authority of the legislature.

RICHARDSON, C. J. delivered the opinion of the court.

The question is, whether upon the facts stated in this case the defendants are legally entitled to a new trial?

The cause has been ably argued on both sides, and no doubt seems to us to be now left as to the rule which must govern our decision.

Olcott
*v.*
Banfill et a.

When individuals, under a charter from the government, construct works for the public accommodation and open the works to the use of the public, this is in law a dedication of the works to the public use, and no toll can be demanded, unless it be authorized by the charter. The reason of this is, that a toll, in such a case, is a common charge which it is the prerogative of the government alone to impose and regulate. This principle seems to be well settled. Thus turnpikes have been held to be public highways, and the erection of a gate upon them without the authority of the legislature has been adjudged a public nuisance. And money exacted as toll at such a gate has been held to be illegally taken, and the person who received it compelled by action to refund it. 2 Mass. Rep. 102, *Commonwealth* v. *Heare* ; 1 Pick 122, *Robbins* v. *Borman, et a.* ; 7 Johns. 179, *Hersey* v. *Pruyn* ; 18 ditto, 397, *Griffin* v. *House.*

So it has been held, that if individuals build a bridge by virtue of an act of the legislature, they cannot legally demand toll without authority from the legislature. 1 Pick. 306–307. It is also well settled, that a ferry is *publici juris*. It is a franchise which no one can erect without authority from the government. If a ferry be erected without authority, or if the franchise be abused, an information in the nature of a *quo warranto* lies. Willes' 512, note ; 6 B. & C. 703, *Peter* v. *Kendall* ; 12 East, 334, note ; Strange, 1161. Case lies, if the owner of a ferry take toll where none can be lawfully exacted. And if the owner of a ferry neglect to keep a boat, he may be punished by indictment. 1 Shower, 231, *Payne* v. *Partridge* ; Com. Dig. " Pischary" B ; Hardres, 163.

But in this cause, it does not appear from the case stated, that the charter was even accepted by any person, or that the corporation was ever in any way organized. It

does not not appear, that the plaintiff ever acted under the charter, or claimed to act under it. He sits up no title to the money he demands of the defendants under the charter. It is, therefore, clear that the locks and canals of the plaintiff do not appear to have been dedicated to the public use by being erected under a charter from the legislature. It is not improbable that the works were erected under the charter, but the fact does not appear. The circumstance, that the charter was procured, might furnish a proper ground on which a jury might presume that the works were erected under it. But we are not at liberty thus to presume and make the presumption a ground of our decision. The charter, then, can have no influence in the determination of the cause at this time, and may be laid out of the case.

We have no doubt, however, that locks and canals, highways, bridges, and ferries may be dedicated to the public without a charter from the government, in such a manner as to render it illegal to take toll. For this purpose, nothing more seems necessary than to make them, hold them out as for the use of the public in general, and permit all who come to have the use of them. After this a toll levied of those who use them becomes in its nature a common charge upon the public, which cannot be legally imposed without the sanction of the legislature. 4 Mod. 320 ; 2 Rolle's Ab. 171.

In the case of *Juxton* v. *Thornhill*, Cro. Car. 132, which was assumpsit for toll for the use of certain locks, the plaintiff had the king's license to erect the locks, and to take a reasonable toll.

There are certain cases, in which, if individuals dedicate their personal services, or the temporary use of their property to the public, the law will impose certain duties upon them and regulate their proceedings to a certain extent. Thus a common carrier is bound by law, if he have conveniences for the purpose to carry for a reasonable compensation. The law is supposed to be the same

with respect to the owners of stage-coaches. All persons are restrained from exercising the business of innkeepers without license, and certain duties are imposed upon those who exercise the business, by a statute. And the toll to be taken at gristmills is regulated by statute. In these cases the law interferes, because such employments concern the public.

But it does not appear, in this case, that the plaintiff had ever held out his works as for the public use, or permitted all who came to use them. There is nothing stated in the case to show a dedication of the works to the use of the public. The only circumstance, if we except the nature of the works, which renders it even probable, that there was a dedication is, that it is stated that these defendants are charged in this case at the same rate as others. But for ought that appears, the plaintiff may have made the locks and canals for his own private accommodation, and only have permitted others occasionally to use them for a reasonable compensation, as he lawfully might do. He might let others use them by a particular agreement although he could not exact a toll. 4 Mod. 320.

And, upon the whole, we see nothing in the case stated which shows this claim of the plaintiff to be illegal.

But the defendants object, that they were improperly precluded from showing the claim of the plaintiff to be unreasonable, and demand a new trial on this ground. It seems to us that this objection is well founded. We have no doubt that the defendants must be bound by the note unless they can show fraud, or mistake, or illegality in the contract. But the account stands upon different grounds. No special contract as to the price of the services there mentioned appears to have been made between the parties, and nothing can be clearer, than that the plaintiff, in such a case, could be entitled to recover no more than a reasonable compensation. It is equally clear, that the defendants ought to have been

permitted to show what was a reasonable compensation ; and on this ground, we are of opinion, that the verdict must be set aside, and

*A new trial granted.*