## THE STATE *versus* MILLS OLCOTT, and others.

In the case of an information, in the nature of a *quo warranto*, the respondent must either justify or disclaim.

A plea in bar, in such a case, must set out the title of the respondent at large, and traverse the usurpation.

The replication should not take issue upon the traverse, but be to the matter of the defence.

In an information, alleging a ursurpation of the right of demanding and taking toll for passing certain locks and canals, the respondents pleaded that they made the locks and canals on their own land, and at their own expense, and took a reasonable compensation for passing, by agreement with those who passed the locks and canals, and traversed the usurpation. To this the state replied, that the locks and canals were made under a charter from the state, and dedicated to the public use, and toll taken according to the charter, for twelve years, after which it was taken without right. Upon demurrer the replication was held to be sufficient in law.

INFORMATION, in the nature of a *quo warranto*, filed by the direction of the legislature ; alleging, that Mills Olcott, William Harris, Edward Tuckerman, and Thomas P. Cushing, for the term of ten years, last past, have used and still do use, without any warrant, or lawful authority, the following liberties, privileges and franchises, to wit, to demand, exact, and receive, of and from all persons passing upon and along Connecticut river, and through the locks and canals, at White river falls, with their boats, rafts, lumber and freight of all descriptions, a certain toll for such passage. All which privileges, liberties, and franchises they have, during all the time aforesaid, usurped, and still do usurp, upon the government of this state. Wherefore it is prayed that they may be held to answer to the state, by what warrant they claim to have, use, and enjoy the liberties, privileges, and franchises aforesaid.

The respondents pleaded, that for more than ten years past they had been the proprietors and owners in their

own right, in fee simple, of all that tract of land, extending north and south, between the head of White river falls on Connecticut river, at the upper bar and the foot of said falls, at the lower bar, and extending east and west from the river, ten rods on each side of the same, and adjacent thereto—that Connecticut river, in its whole course through said tract of land, never was, in its natural state, navigable for boats, and rafts of lumber, and freight of all descriptions, from the said upper bar to the lower bar, aforesaid, on account of natural obstructions therein, and was never used, by the public, for the purpose of boating and rafting—that the respondents, being the owners of the said tract of land, on the 23d September, 1822, made a canal, on their own soil and at their own expense, on the east side of the said river, around said falls, and erected locks and gates, and made the same navigable—that, after making the said canal navigable, they have received, by agreement and contract with all such persons as have passed through the same, with their boats, rafts of lumber and freight of all descriptions, a reasonable compensation for such use and passage, as they lawfully might do, and by that warrant the respondents, during all the time in the said information mentioned, have claimed and received, and still do claim and receive, a reasonable compensation for such use and passage, by agreement and contract as aforesaid, which is the same demanding and exacting from all persons passing through said locks, in the said information set forth ; without this, that the respondents, the said liberties, privileges and franchises have usurped upon the government of the state.

To this plea the attorney general replied, that, on application duly made, the legislature, on the 12th June, 1807, passed an act, entitled, " an act granting to Mills Olcott the privilege of locking White river falls"—which act made the said Olcott and his associates a corporation, by the name of the White river falls company—and gave

to the said Olcott and his associates the exclusive privilege of cutting canals and locking said falls, and rendering the river navigable from the upper to the lower bar forever, and also gave them power to purchase, and hold, lands contiguous to said locks and necessary therefor. And it was provided, by the act, that, if the said Olcott should find it necessary to make use of the lands of private persons, in the prosecution of said object, for placing locks, digging canals, or for roads or towing paths, the selectmen of the town where the lands might be, were authorized to lay out, and set off the same, accordingly, in the manner that roads are laid out by selectmen. And any damage done to individuals, or corporations, by reason of flowing roads or land, was to be ascertained in the same manner as the damage done to individuals by roads laid out through their lands by selectmen.

And the corporation was empowered to fix the toll to be received, under certain restrictions, for the term of twelve years after the locks should be completed.

The attorney general then alleged, that, on the 13th June, 1807, the said act was accepted by the grantees, who afterwards acted under the same—that the said locks and canals were, on 1st June, 1820, completed, and were thereupon, by said grantees, held out and opened to the use of the public, and the said grantees commenced receiving of and from all persons using the said locks and canals, a certain rate of toll, to wit, one dollar per thousand on lumber, and two dollars on each boat, for such passage through the same.

And from the time of the completion of said locks and canals, up to the time of filing the said information, the said grantees and the respondents have continued the said locks and canals, for the use of the public, and, demanded, and received, during the term of twelve years mentioned in said act, of and from all persons passing, tolls, at the rate aforesaid. And the said respondents, after the expiration of the said term of twelve years, con-

tinued to demand and receive toll, without any lawful right or authority, which is the compensation mentioned in the plea.

To this replication there was a demurrer, and a joinder in demurrer.

*Bell* and *Bartlett*, for the respondents, objected to the replication, that there was no averment, that the respondents ever accepted the charter ; nor that Olcott, who is named in the charter, was the same person as the respondent by that name ; nor that these respondents ever dedicated the works to the use of the public.

It was further objected that it was not averred in the replication that Connecticut river was a navigable stream.

*The Attorney General, Nelson* and *Parker*, for the state.

The opinion of the court was delivered by RICHARDSON, C. J.

In a case of this kind, where the prosecution is an information in the nature of a *quo warranto*, the respondent must either disclaim, or justify. For the object of the proceding is to ascertain by what warrant or authority the respondent holds the franchise. Angell on Corporations, 494.

A plea in bar should set out the title of the respondents at length, and conclude with a traverse of the usurpation. The plea in this case is in bar, and, if not sufficiently answered in the replication, seems to be a good bar to the information. For, surely, every man has a right to demand a reasonable compensation for the use of his property.

The replication should not take issue on the traverse, but should be to the special mattter of the defence. 4 Cowen, 119 ; Gilbert's Reports, 145, *Rex* v. *Blagden.*

The replication, in this case, is correct in this respect. It states, in answer to the matter of the plea, that in 1807 the legislature created a corporation, with power to make locks and canals, at the said White river falls,

and authorized the grantees of the charter to fix the toll to be received for passing the locks and canals, for twelve years from the time of completing the canal; that the charter was accepted by the grantees, who acted under it; made the locks and canals, and held them out for public use, and received a certain toll; that the grantees, and these respondents, have ever since continued to receive toll; and that the respondents, after the expiration of the twelve years mentioned in the charter, continued to demand and receive toll without lawful right.

Now the demurrer admits the truth of all this, if it be well pleaded; and the question is whether this matter, as it is pleaded, is a good answer to the plea?

If the charter was accepted by the grantees, the works erected under it and dedicated and held out to public use, and a toll taken according to the charter for twelve years, it is clear that no person can now have a right to demand any toll for passing the locks, unless such demand is authorized by the legislature. 4 N. H. Rep. 545.

The matter of the replication is then, in substance, a good answer to the matter of the plea.

It is objected to the replication that it is not averred that these respondents accepted the charter; nor that Olcott, named in the charter, is the same person as the respondent of that name, nor that these respondents ever dedicated and held out the works to the public use. But it is wholly immaterial whether these respondents accepted the charter, or not. It is enough that it is averred that the grantees, named in the charter, accepted it, that the works were erected under it, and dedicated to the public use. If this be true, no person can now have a right to toll without authority from the legislature.

It is also immaterial, whether the respondent, Olcott, is the person named in the charter, or whether these respondents dedicated the works to the public use. It is a sufficient answer to the plea that the present owners

<div style="float:right">State
v.
Olcott et. a.</div>

have no right to toll, without authority from the legislature, because the former owners erected the works and dedicated them to the public use.

Nor do we see how it is, in any way, material in this case, whether Connecticut river be a navigable stream or not.

We are, therefore, on the whole, of opinion that the replication must be adjudged sufficient.