Richardson, Justice.
As this case has given rise to some contrariety of opinion, I will first present the plaintiff’s case ; and then enquire whether the defence set up can justify the verdict given. It does not appear from the evidence, that the defendant, (Mordecai,) informed the plaintiff* (Waddell,) who were the specific owners of *20 the brig Encomium ; i. e. he did not eall them by name, nor are there just grounds for retaining any part of the passage money, “pro rata itineris.” The voyage utterly failed. The negroes were not advanced a single league towards their destined port: on the contrary, much injury was done to Waddell. The captain, in his own language, “ did not care a-,” and by his conduct verified his utter disregard of the duties he had undertaken to perform. He wilfully carried the negroes out of the voyage, into Nassau, where they were lost or detained : all but the seven who returned home. We have here certainly a strong case on the part of Waddell, for recovering not only the passage money advanced, but for a much greater amount in damages. But is Mordecai answerable for either the one or the other ? If in no due time, he disclosed to Waddell that he acted as agent merely, and for whom his agency was, then he might be holden liable for all the damages; for if we are to hold him as principal by reason of his passing himself in that character, he must take to himself all the consequences that would otherwise have accrued to the true principal. Waddell has great, claims. But from whom are they due? Does Mordecai come in for the payment of any part? or may he not be yet found under the established rules that protect agents from liability. Mordecai may have been in danger, from the seeming concealment of his principal, and still escape unhurt. He may still be in no worse situation than that of his humble namesake, who in old time sat obtrusively in the king’s gate. The act was offensive; but it did not follow in the law, when duly considered, that he was to be hung up on high. Let us then see under the same measure of strict law, whether our Mordecai may not also pass through unhurt. What are the facts on this side of the case ? Since the verdict, it cannot be questioned — That Mordecai paid over the hundred dollars, advanced by Waddell, to the owners of the brig; that he received no timely notice to retain the money; that he acted, throughout, in good faith; and in the whole transaction appeared as the certain agent of the owners of the brig, though they were not specifically named. Under these facts the decision depends upon the following general rule — “ Standing,” (says Chanc. Kent, 2 vol. 630, 2d ed.) “ on strong foundations, and pervading every system of jurisprudence — That where an agent is duly constituted, and names his principal, and ct>n¿ tracts in his name, the principal is responsible and not the agént,” &c. &c. “If he, (the agent,) makes the contract in behalf of his principal, and discloses his name at the time, he is not personally liable,” &c. Under this general rule the question recurs, — Did Mordecai name his principal ? The answer is, he entered into the contract a* agent *21 for the owners of the Encomium — But he did not express or give •their paternal or Christian names. Now is such fullness and precision indispensable, where the communication made is intelligible ? I cencede that every agent must so disclose his principal at the time of the contract, as to enable the opposite party to have recourse to the principal, in case the agent had authority to bind him, Kent 631. But I cannot perceive wherein lies the necessity of the agent naming specifically, and severally, every one of a class or company of his prin-eipals, who are usually designated among men of business by some brief descriptive terms. For instance, were an agent to say the work is to be done for the steamer Etiwan, and I am the captain, or for the owners of Fitzsimons’ wharf. This would be enough prima facie, unless or until the agent be called on for a more precise specification of the names of his principals. To require more in every instance, would be very often to require matter utterly superfluous. We have illustrations, that the rule so construed, is a safe one, in the common practice of clerks of stores, who, perhaps every day, procure goods at a neighboring store, with the laconic expression, “ They are for our house,” or the like. Time is equal to money, and business briefly told saves it, are rules drawn from experience, and are at the bottom of such practical brevity ; and the frequency of this practice illustrates satisfactorily the received meaning of the rule of law now before the court. It is emphatically one of every day business, and should be construed with a view to daily convenience.
The agent who communicates plainly, that he acts for another per. son, informs the party with whom he deals, that he does not intend to be himself responsible. And if he designates intelligibly, the party to whom recourse is to be had, he gives the information necessary for the free use of the judgment and discretion of the party dealing with him; and has done his office in this respect for the ordinary purposes of business. As to express adjudications on the precise poinc, I admit that we have none which go so far as to declare that an agent need not be plenary and precise in naming all his principals, although they are numerous. But rules for practical business, are rules of convenience and safety for ordinary men. We want them for con. venient application to our habitual business. We must, therefore, consult convenience, safety and ordinary business, in applying such rules to practice. And although we have no express adjudications on the precise point before us, yet there are not wanting expressions of judges and lawyers, in accordance with the practical exposition and application I have given of the rule, that the agent shall disclose ids principal. And when learned men, and practical men, agree on *22 a given subject, their agreement shews a settled opinion, which gives practical law to society. In the case of Owen vs. Gooch, (2 Espi. N. P. cases 567,) Lord Kenyon first lays down the general rule, thus : “ If a party orders goods, &c. though in fact they are for another, if the tradesman was not informed at the time that they were for the use of another, he who ordered them is certainly liable.” Yet he adds in the same breath, &c. “ if goods are ordered, &c. on account of another, and after the delivery, the person who gave the order, refuses to inform the tradesman, who the person is, in order that he may sue him, &c. he is himself liable.” Now to the first slight impressions upon the reader, the judge may seem to have laid down inconsistent propositions. First, that the tradesman must have been informed who the principal is, at the very time of the contract. Second, that if the agent afterwards refuses to inform the tradesman who the principal is, he himself becomes liable. But if we apply the souud common sense which is to be found in the practice already noticed we shall soon see the application of the maxim, “Quiheret in litera, lieret. in cortice.” But let us first draw somewhat further upon the current opinions of the learned, in support of the practice under the general rule. Counsellor Livermore, whose treatise on the law of principal and agent, is so full and distinct, quotes the dictum of Lord Kenyon, as of course correct, 2 vol. 247. Barristers Starkie and Paley, no less learned and profound, do the same in the same spirit, 3 Starkie 1020. Paley’s P. and A. 250. All cite the dictum, and not one commentator does it with disapprobation, or seems to apprehend any inconsistency in the judge’s two propositions. The inconsistency, if any. floats on the surface. Lord Kenyon means, just what the general rule reasonably imports, to wit: That the agent must declare his principal, at the time of the contract, so that the opposite party may know, not only that the agent does not bind himself, but what party he trusts. Why must he know the party, clearly, that he may exercise his own judgment as to whom he will trust, in the first i (Stance ; and that he may have recourse, finally, to the principal to whom'the age.it has imputed the contract ? It seems to me then very plain, that upon a just exposition of the rule, where more precise information is wanted than that of a general designation of the principal made at the time of the contract; and which may be required, in the course of events, in order to proceed in a suit against the principal, or for other purpose, such extra information should be sought for by the party requiring it; and if the agent refuses to give it, he may be still liable; and this is the meaning of the judge in the case of Owens vs. Gooch, The same might perhaps be *23 said if be refuses to exhibit his power, when necessarily called for by the opposite party. But admitting that there may be room for two opinions upon the present application of the leading rule in the law of principal and agent, there is another view of the case, which benders the verdict both satisfactory and strictly legal. The action is for money had and received to the use of the plaintiff. The hundred dollars was voluntarily paid by the plaintiff in advance ; and he gave no timely notice to have the money detained. Mordecai committed no trespass, and made no encroachment upon the rights of the plaintiff. He simply received the money advanced for his principal. Had he obtained it by some device, or by any deliberate and affirmative act of his own, as by selling one of the negroes, there would have been much more reason and law in charging him, personally. But to render him liable, in the equitable action of money “had and received,” when he was the mere quiescent receiver without bad faith, and had given the money its only proper destination, by paying it over, would be to adjudge him principal “ in extenso,” and of course liable for all the damage done by the captain at Nassau. It would be to divert the . primary principle of this species of action, which has been called a “libel bill in equity,” in which money shall not be recovered against equity and good conscience. This is strictly a legal view. And assuredly, whatever view may be taken of his conduct in other respects, in the matter of this particular action, both in receiving and paying over the hundred dollars, Mordecai stands blameless ; in this regard, at least, he is “an Israelite indeed without guile.” The motion is dismissed.
J. S. RICHARDSON.
We concur,
HENRY VV. DESAUSSURE,
JOHN B. O’NEALL,
RICHARD GANTT,
DAVID JOHNSON.
A. P. BUTLER,
Earle, Justice.
This cause was tried hefore me in the court be. low, and although I am not allowed to exercise appeal jurisdiction in relation to it, yet as I intimated a doubt if the verdict could be sustained, the opinion of the court will not be diminished in its authority, if I add the grounds on which my doubts have been removed. I thick the verdict of .the jury was rendered^tnahily on the ground, that the defendant contracted as agent for the owners, that they would transport the slaves in question; and that he not only did not mean to make himself liable, but that on a just interpretation of such a contract, and according to the commo i understanding of this community, he was not liable personally. Without abandoning the test 1 before held to be the true one. that the defendant was liable in this action to recover back the money paid on the contract, if he would have been liable on the original contract for non-performance — I think it may *24 well be questioned, whether the defendant, was so liable, for the reasons already assigned by Mr. Justice Richaudson, without saying that I fully concur in all the views presented, and without meaning to express any dissent. I confess I feel too doubtful on that question to disturb the verdict even if it depended on myself. But there was another ground on which I thought the defendant might be held liable in this action, for money received by him, on account of his principals, whiclt they were clearly not entitled to retain, although he1 had made the contract as agent, and was not himself personally liable on the contract. Such an action might be maintained against the agent if he has received notice not to pay the money over, and I apprehend without such notice, if in fact the money has not been actually paid over. 7 John. Rep. 179. . .
Such was the defence in this case ; but I thought the declarations of the defendant under the circumstances, was not legal proof of the fact. Considering that such matter of discharge should he made out by the defendant on competent evidence. This was error. If the plaintiff sought to recover back from the agent, money paid him on account of the principal, he should have proved notice not to pay over; or that the money remained in the hands of the agent. It was not incumbent on the defendant to discharge himself by proving that he had paid over. On this ground, therefore, the verdict is right, if it be so on the former.
B. J. EARLE.