Cook v. Cook.

amount of the set-off claimed by the defendant, by showing that he (plaintiff) had paid out divers sums of money, and incurred considerable expense, in the prosecution of said Patterson's suit for freedom; but this evidence was excluded by the court, and the plaintiff excepted.

" This being all the evidence, the court charged the jury, that the defendant was entitled to recover of the plaintiff one third of the value of the services of said boy for one year, after deducting the amount of plaintiff's account; to which charge the plaintiff excepted."

The charge of the court, and the rulings on the evidence, are now assigned as error.

D. C. HUMPHREYS, for the appellant.

LOUIS WYETH, contra.

# COOK vs. COOK.

[ASSUMPSIT FOR MONEY HAD AND RECEIVED TO RECOVER RENT.]

1. *Estoppel against tenant from denying landlord's title.*—Where the tenant has enjoyed the undisturbed possession of the land during the period of the lease, he is estopped, in any proceeding for the recovery of rent, from denying the landlord's title.

2. *Lease by tenant at will, validity of.*—The general doctrine, that the making of a lease by a tenant at will terminates his tenancy, and converts him into a disseisor, must be understood with this qualification, that it has that effect only at the election of the landlord, and that the tenant cannot avail himself of it to avoid the payment of the rent.

3. *Tenancy at will, how determined.*—To determine a tenancy at will, by the landlord's entering upon the land, and there by words declaring it at an end, it is necessary that the tenant should have notice of such words.

4. *Liability of principal for money wrongfully received by agent.*—Although an agent is liable personally for money received by him, by authority of his principal, belonging to another; yet the principal also is liable, whether the money is paid over to him or not.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. ANDREW B. MOORE.

THIS action was brought by Michael Cook against Hilary T. Cook, " to recover $60, with interest from the 1st January, 1852, for that much money had and received by defendant, to and for the use of the plaintiff." The defendant pleaded, 1st, *non assumpsit;* 2d, payment; 3d, set-off; 4th, accord and satisfaction; and, 5th, fraud. The bill of exceptions states the following facts:

The plaintiff offered in evidence two notes, dated March 3, 1851, and payable to M. Cook, jr., on the 1st January, 1852; one for $40, " for the rent of his tract of land, known as 'the H. T. Cook tract,' for 1851 "; and the other for $20, " for the rent of land for the year 1851." " The name of the maker of said notes had been torn off; but plaintiff proved that they were made to him by William T. Scott, and were given for the rent of a tract of land, known as 'the H. T. Cook tract,' for the year 1851; that said Scott paid defendant the note for $20, about the 20th February, 1852, and also paid the other note, some time during the spring of that year, to one William W. Morrow, to whom, as was proved by one Eaves, defendant had handed said note for collection. These facts, except the handing of the note to Morrow, were proved by said Scott, who stated, on cross-examination, that when he rented said land from plaintiff, he told him that he had rented the same from defendant, for the year 1851, and was to pay him $50 therefor, and to do $10 worth of repairing to the fencing on said land. Said Scott also testified, in answer

to questions propounded to him by plaintiff, that in April or May, 1851, Michael Cook, sr., who was the father of both plaintiff and defendant, came on said land, where witness was working, and witness stated to him, that he apprehended some difficulty about paying his rent for said land,—that he had rented it from plaintiff, and understood that defendant was claiming the rent,—and asked said Cook to whom he must pay the rent; that Cook then told him, that defendant had nothing to do with the land,—that it was his so long as he lived on it, and that whatsover plaintiff did about said land, or whatsoever arrangement witness made with him, was right; that neither plaintiff nor defendant was present at this conversation, and he did not communicate the same to defendant. To the introduction of this conversation, between said Scott and Cook, defendant objected, but the court overruled the objection; and defendant excepted.

" Plaintiff then introduced Isaac S. Eaves as a witness, who, on his direct, cross, and re-examination, deposed in substance as follows: That plaintiff, in the fall of the year 1851, being about to go to Louisiana, appointed him and defendant his agents, to take his business in hand and manage it during his absence, and instructed them to collect the claims that were due him, and to pay off the claims that were against him; that the instructions to pay off claims were general, no particular debt or claim being specified; that plaintiff then handed his papers over to witness, and took the joint receipt of witness and defendant; that plaintiff admitted, in the conversation between him and defendant, that in the preceding February he had rented said tract of land from defendant for the year 1851, and had given him his note for $50, due January 1, 1852, and had agreed to do some repairing to the fences for the rent; that after some discussion between plaintiff and defendant, as to the amount and value of the repairing that plaintiff had agreed to do, they said, that they had at last agreed that said repairing should be estimated at $10; and it was then and there agreed between them, that defendant should take Scott's said notes, in satisfaction and discharge of said note due him from *defendant* (?) and of said repairs. Witness said, that the only thing which prevented the consummation of said agreement at that

time was, that defendant did not then have said note on plaintiff with him; that plaintiff left for Louisiana a day or two afterwards, and about a week after he left witness delivered up to defendant said notes on Scott, in satisfaction of said note for $50 and claim for repairs, and received from defendant said $50 note, which was produced and proved, and was in these words:

'February 12, 1851.

' On or before the first day of January next, I promise to pay H. T. Cook, or bearer, the sum of $50, it being for the rent of my tract or parcel of land, for the year 1851.'

(signed) 'M. Cook, Jr.'

" Witness further testified, that he had ever since retained said note in his hands, or possession; that when plaintiff returned from Louisiana, in the spring of 1852, witness offered said note to him, and he declined to receive it; that defendant had had possession of said land for more than three years prior to 1851, and went out of possession about 1st February, 1851; that plaintiff admitted, in the conversation referred to, that he had rented and held the land from defendant from 1851, and said nothing whatever of any claim on his part adverse to defendant's. It was also proved that defendant, prior to renting the land to plaintiff, put up buildings, and made preparations to move, and about the time of the renting moved to another place of his own. It was admitted by the defendant, on the trial, that the legal title to the land was in Michael Cook, sr., who was the true owner, and who died in December, 1851, and that defendant had never had any title in writing to the same; but he proved, by one witness, that said M. Cook, sr., in the fall of 1851, said that he had given said tract of land to defendant, and intended to make him a title to it. Plaintiff offered to prove, by one Thomas Cook, that he heard a conversation, in the fall of the year 1850, between said plaintiff and M. Cook, sr., in which the latter said, that the land was only defendant's so long as he cultivated it, and that, when he left it, it was as much plaintiff's as his; and that defendant was not present at said conversation. The defendant objected to the introduction of this evidence, but the court overruled the objection; and defendant excepted.

"Said witness also testified to a conversation, in the fall of 1851, between plaintiff and said M. Cook, sr., about a horse-swap, in which something was said about paying the rent of said land by the boot which the latter was to give plaintiff in said trade; but the witness stated, that he could not say that any agreement in reference to the same was actually made, but that they did not swap horses. To the introduction of this evidence, also, the defendant objected, but the court overruled the objection; and defendant excepted. Plaintiff offered testimony, also, showing that on his return from Louisiana, in February, 1852, on being informed that Eaves had given up Scott's notes to defendant in satisfaction of plaintiff's note to defendant, he refused to recognize said act. The defendant objected to the introduction of this evidence, but the court overruled the objection, and defendant excepted.

"The above is the substance of all the evidence given on the trial, and there was no other evidence tending to show that plaintiff had rented said land from said M. Cook, sr.; or that defendant at any time had notice from any person that plaintiff or said Scott held said land adversely to him, during the year 1851; or that the conversation between Scott and M. Cook, sr., as detailed by said Scott, had ever taken place.

"The court charged the jury as follows:

"1 That although they might believe that defendant had rented the land from plaintiff, and held it under him during the year 1851, by his sub-tenant, Scott; yet, as it was admitted that the title to the land was in M. Cook, sr., and that defendant had no title thereto in writing, defendant was a tenant at will under said M. Cook, sr.; and if the jury believed that defendant took possession and held under and by virtue of a verbal gift from M. Cook, sr., and that the latter intended, by what passed between him and Scott in April or May, 1851, to terminate defendant's tenancy, and to give to plaintiff the rent due from Scott, then plaintiff was entitled to recover the amount of said notes from defendant, in this action, although there was no evidence to show that defendant had any notice of what passed between said Scott and M. Cook, sr., or of any adverse claim of plaintiff to said rent.

"2. That if they further believed that defendant and his

agent, Morrow, received the money due on the notes of Scott to plaintiff, and that defendant placed the $40 note on Scott in the hands of Morrow for collection, as his agent, and that Scott paid the amount thereof to Morrow before the bringing of this suit, the plaintiff would be entitled to recover, in this suit, the amount so paid to Morrow, although there was no evidence to show that defendant himself had ever received the money.

" 3. That if the defendant went into and held possession of said land under his father, and in subordination to his title, and then removed from the land, and rented it to plaintiff, who afterwards obtained the land under an arrangement with his father, and then rented it to Scott; and if the old man, in April, 1851, on Scott's inquiring to whom he was bound to pay the rent, told him that defendant had nothing to do with the land, and that whatever arrangement he made with plaintiff would be right; and if Scott agreed to pay plaintiff the rent,—then the defendant was not entitled to recover the rent, or to apply the proceeds of Scott's notes to the payment of the note on Michael, if the old man intended, by what he said, to put an end to any right of defendant's to recover the rent.

" 4. That the agreement to discharge the amount due from plaintiff to defendant, for the rent of said land, with the notes of Scott, and the subsequent delivery of Scott's notes to defendant by plaintiff's agent, in discharge of said rent due to defendant, and the reception and continued detention of said note by plaintiff's said agent, presented no bar to plaintiff's right to recover in this suit,—it being admitted that the title to the land was in M. Cook, sr.; if the jury believed that said M. Cook, sr., by what he said to Scott, intended to terminate defendant's tenancy at will, although defendant may have had no notice of such intention."

The defendant excepted to each one of these charges, and then requested several others, which the court refused to give, and which it is not necessary to notice particularly.

He now assigns for error the rulings on the evidence, the several charges given, and the refusals to give the several charges asked.

43

I. W. GARROTT, for the appellant:

1. The defendant below was not liable for money paid to his agent, Morrow. If plaintiff could recover at all, it was on the ground that defendant had converted the note on Scott; and, if so, Morrow was in no better position. Defendant could not legally authorize Morrow to do a wrongful act; and as both were wrongdoers, and defendant did not receive the amount of the note, this action would not lie against him.—Crow v. Boyd's Adm'r, 17 Ala. 54. If money due plaintiff is received by an agent of defendant, who had no right to receive it, an action for money had and received lies against the agent, but not against the principal, unless he has actually received the money.—1 Chitty's Pleadings, 36; Hearsey v. Pruyn, 7 Johns. 182; Colvin v. Holbrook, 2 Comstock, 126. The true distinction is, that if the principal had the right to receive the money, and the agent received it in pursuance of his authority, and the plaintiff's claim is in affirmance of the principal's right to receive it, the action for money had and received may be maintained, whenever it is shown that the agent has received the money.—Costigan v. Newland, 12 Barb. 459.

2. The plaintiff below rented from the defendant, went into possession under him, and re-let the land to Scott, who occupied during the year; that is, the land was occupied by virtue of the lease from the defendant to plaintiff. Occupying this position, plaintiff could not dispute defendant's right to the rents.—Archbold's Landlord and Tenant, 155, and cases there cited; Wyatt v. Bibb, 4 Stew. & P. 391; 8 Porter, 500.

3. The agreement to take Scott's notes, in satisfaction of the amount due from plaintiff for the rents, and the subsequent execution of the agreement by the delivery of the notes, amount to a complete settlement and adjustment of the whole case.—Chitty on Contracts, 654; 1 Bacon's Abr. 55; Coit and Woolsey v. Houston, 3 John. Cases, 243.

4. The conversation between Scott and M. Cook, sr., as against the defendant below, was wholly inadmissible. The defendant did not stand in such a relation towards said Cook, that the declarations of the latter, when defendant was not present, would be binding on him.

5. Eaves and the defendant below were the plaintiff's

Cook v. Cook.

authorized agents to collect what was due him, and to pay the debts which he owed. Eaves paid the defendant, and the latter received the payment, in Scott's notes. No fraud, or collusion, is alleged, or pretended. These notes were paid by plaintiff's authorized agent, in satisfaction of the debt due defendant, and in execution of an agreement made by plaintiff himself. Money thus paid certainly cannot be recovered back. It must have been, at least, a voluntary payment.— Chitty on Contracts, 547.

WM. M. BROOKS, contra:

1. The defendant admitted, on the trial, that he held possession of the land under and in subordination to the title of his father, who was the true owner, and as his donee in expectancy. He was, therefore, a mere tenant at sufferance, having no right to rent out the land, and subject at any time to be turned out of possession, without notice. His renting it out did not place the true owner in a worse condition than when he was in possession himself; and when he was in possession, the owner's control of the land, and of its rents and profits, was absolute and unconditional. He had the right to rent it, to sell it, to give away the rent, or to direct Scott to pay the rent to whom he pleased; and all his acts and declarations to that effect, whether made or done in the presence or absence of defendant, are admissible evidence. This admission precluded the defendant from objecting to anything said or done by his father in reference to the land.

2. M. Cook, sr., being the true owner of the land, and while defendant was his tenant at sufferance, either gave the rent to plaintiff, or assigned it to him for valuable consideration; and, in either case, plaintiff had the right to recover the rent from Scott.

3. Scott gave plaintiff his notes for the rent, and became bound to pay them to him; and when these notes were collected by defendant, as his agent, he was entitled to the money. The fact that plaintiff had rented from defendant, and the subsequent imperfect agreement to apply Scott's notes in payment of the rent, present no bar to plaintiff's recovery of the proceeds of the note.

4. The payment of the money to defendant's agent was, in

law, a payment to defendant himself; and the action could only be maintained against defendant.—Costigan v. Newland, 12 Barb. 457; 1 Camp. 337; 3 *ib.* 139; Stephens v. Babcock, 23 English Law & Equity R. 93.

WALKER, J.—In a proceeding for the recovery of rent, the tenant is estopped from denying the landlord's title, when he has enjoyed the undisturbed possession of the land during the period of the lease.—Perkins v. Governor, Minor, 358; Hanks v. Hinson & Patterson, 4 Porter, 509; Terry v. Ferguson, adm'r, 8 *ib.* 502; Tillotson v. Kennedy, 5 Ala. R. 407; Shelton v. Eslava, 6 *ib.* 233; Smith v. Mundy, 18 *ib.* 185; Rickets v. Garrett, 11 *ib.* 811.

The general principle above stated, is not disputed in this case; but it is contended that there are features in it, which relieve it from an application of that principle. In the inquiry as to the applicability of the doctrine of estoppel to the relation which existed between appellant and appellee, we purposely avoid the question, whether the appellant was a tenant at will; because, conceding that he was, the judgment of the court below must be reversed. We shall, therefore, proceed to consider the case upon the hypothesis, that the appellant was the tenant at will of Michael Cook, sr., at the time when he rented the land to appellee. Upon the adoption of that hypothesis, there are two questions which arise: first, whether or not a tenant at will can make a valid lease of the land, which is the subject of the tenancy at will; secondly, whether or not the facts in this case, to which the charges must be referred, terminated the tenancy at will pending the lease to appellee, and absolved the appellee from the payment of rent.

The general doctrine is, that a tenancy at will is not assignable, and that the making of a lease terminates the tenancy at will, and converts the tenant at will into a disseizor; but this rule must be understood with this qualification, that the making of a lease by the tenant at will has such an effect at the *election only of the owner* of the land. No other person than the owner has the right to *elect* to regard the lease of the land, which is the subject of the tenancy at will, as a termination of the tenancy.—1 Thomas' Coke, 1st

Am. ed., 147, note 26; 3 *ib.* 643 to 650; Atkyns v. Horde, 1 Burr. 60; 4 Comyn's Digest, 101, note *e*; 1 Greenleaf's Cruise on Real Property, m. p. 244, § 8.

From the principle above stated, and the authorities cited, we conclude, that the fact of the appellant being a tenant at will at the time when he leased the land, which was the subject of the tenancy at will, affords no argument available to the appellee, why he should not pay the rent, which he contracted to pay upon becoming the tenant of him who had the estate at will.

A tenancy at will is determinable at the will of the lessor; and one mode of determining it is, by the lessor's entering upon the land, and there by words declaring it an end. But the better opinion is, that such words do not terminate the estate at will, until the lessee has notice.—1 Thomas' Coke, 1st Am. ed., top page 746; 4 Kent's Com. 114; Rising v. Stannard, 17 Mass. 286; Philips v. Covert, 7 Johns. 1. The condition of estates at will has been meliorated, so far as to give the tenant a right to notice to quit. The words spoken by Michael Cook, sr., when he entered upon the land, as proved by the witness Scott, even though they might otherwise be sufficient, (of which we are not at all certain,) could not have the effect of extinguishing the tenancy at will, because the appellant had no notice of them.

If the agent receives money, by authority of his principal, which belongs to another, the principal is liable, no matter whether the agent paid over the money to him or not. The maxim of the law is, " *qui facit per alium, facit per se.*" It would be unjust, and inconsistent with the analogies of the law, to permit a principal, whose agent had by his authority received money, to excuse himself from responsibility, by saying that he had no right to the money. It would be to allow him to take advantage of his own wrong. The cases cited by the appellant's counsel are to the effect, that the agent can not absolve himself from responsibility, where the authority was wrongfully conferred upon him by the principal.—Colvin v. Holbrook, 2 Comstock, 126; Costigan v. Newland, 12 Barbour's S. C. Rep. 456; Hearsey v. Pruyn, 7 John. 182. But the fact that the agent may be liable, does not exempt the principal from liability. The act of the

agent, done by the authority of the principal, is also the act of the principal.—Story on Agency, 463, § 451. We conclude, that if any person was liable to the appellee for the money received from Scott, the appellant is liable, and that this action is in the proper form.—Crow v. Boyd, 17 Ala. 54; Upchurch v. Nosworthy, 15 Ala.

Several of the charges given, and refusals to charge, and rulings as to the admission of evidence, are in conflict with this opinion; and therefore the judgment of the court below is reversed, and the cause remanded.